### JAMES B. FRANKLIN v. CLARA A. FRANKLIN.

1. DIVORCE — *Abandonment* — *Evidence.*  To reverse the judgment of a district court refusing a divorce on the ground of abandonment, the evidence showing an intentional desertion for at least one year must be clear, convincing, and uncontradicted, and it must also appear that such abandonment was not the result of the plaintiff's own wrongdoing.

2. TEMPORARY INSANITY, *How to be Viewed.*  The case of a wife who has been afflicted with temporary insanity will be viewed with especial care and consideration, and all her actions will be weighed in the light of her physical and mental infirmities.

*Error from Brown District Court.*

ACTION by *James B. Franklin* against *Clara A. Franklin* for a divorce.   From a decree denying the petition, plaintiff brings error.

*James Falloon*, for plaintiff in error.

The opinion of the court was delivered by

ALLEN, J.:  James B. Franklin commenced this action in the district court of Brown county to obtain a divorce from

his wife, on the ground of abandonment.   She answered, denying such abandonment, alleging cruelty on the part of her husband, praying a divorce from him, and for alimony.   The court, after hearing the evidence, denied both the application of the plaintiff and of the defendant for a divorce.

It is contended in this court that the plaintiff clearly proved an abandonment, and that, having done so, he is entitled, as a matter of strict legal right, to a divorce.   No appearance is made here by the defendant.   In § 643 of the code it is provided that, "when the parties appear to be in equal wrong, the court may, in its discretion, refuse to grant a divorce." It appears from the evidence that the parties were married in 1873, in Illinois, where they resided until the defendant became temporarily insane.   While the defendant was in the insane asylum at Elgin, Ill., the plaintiff came to Kansas. The defendant remained in the asylum about a year and a half.   When she had recovered sufficiently to be discharged, the plaintiff went back to Illinois and brought her out to Kansas with him.   The parties have two children, both boys. One day the younger one, about six years old, went to a neighbor's to play with a little girl.   The father had forbidden his going.   The mother, not knowing what the father had done, gave him permission to go.   At night the father whipped him for his disobedience, in the presence of the mother.   She opposed his doing so, and a scuffle took place between them, she striking him and he pushing her roughly. Soon after this she left, and went back to her father in Illinois. The evidence is somewhat conflicting as to just what took place immediately before her departure.   The plaintiff testified that he told her she must not go.   The defendant's father, who was present at the time, testified that he told her, "You can go, but you cannot take anything but your wardrobe." There is testimony showing that, at the time the defendant left her husband, she intended never to return.   She herself testified that she did not then think she would ever come back, but after being away four or five weeks she wanted to return.   It appears that she wrote at least twice to the boys,

and once to her husband, but never received any answer from either of them.    Just before she became insane, there was trouble in the family over an accusation made by the defendant against the plaintiff's mother of having taken some little things of trifling value from their house.    The defendant seems to have been much disturbed, and to have brooded over it a great deal.    At the time the defendant left her husband it is clear that he refused to permit her to take anything away but her own clothing; that he would not allow her to take household goods that belonged to her.

Under these facts, and others of minor importance, disclosed by the record, we do not think that the plaintiff has shown either a clear cause of action in his own favor, or that he is not in equal wrong.    The defendant was for a time afflicted with the greatest misfortune that can possibly be visited on a human being—the loss of her reason.    This entitled her to the most kind and charitable treatment at the hands of all mankind, and most especially from her husband. While it appears that she was restored to a fair degree of health, she afterward performed all of the household duties for their family, and testified to being afflicted with very violent headaches.    The record does not show positive cruelty on the part of her husband, but, on the other hand, there is testimony tending to show that he was not at all times as considerate as he should have been, in view of his wife's weakness and infirmity.    We think the shortcomings of the wife, and her somewhat erratic actions, are to be viewed charitably, and, being so viewed, in connection with the conduct of the husband, failed to disclose any ground for the dissolution of the marriage tie.

Counsel for the plaintiff in error comments harshly on the testimony of the defendant.    We have read it all over carefully, and, while there is nothing but the written record before us, her statements appear to be entirely candid.    There is no apparent effort to conceal or evade anything bearing against herself, and we think the criticisms, as addressed to this court, wholly unwarranted.    We do not think that hus-

bands who have wives so afflicted should be encouraged to seek to be rid of them, but rather should be held to a more strict performance of their marital duties.   The record does not show extreme cruelty on the part of this husband.   At most he was guilty of a lack of kindly consideration for his wife at times.   On the whole record, we are satisfied that the trial court reached correct conclusions, and the judgment is affirmed.

All the Justices concurring.